# Richmond

## HARRY C. COUREAS v. ALLSTATE INSURANCE COMPANY, A CORPORATION.

April 23, 1956.

Record No. 4496.

Present, All the Justices.

The opinion states the case.

*Herbert Bangel* (*A. A. Bangel* and *Bangel, Bangel & Bangel* on brief), for the plaintiff in error.

*Luther W. White, III* (*I. W. Jacobs* and *Worthington & White* on brief), for the defendant in error.

SMITH, J., delivered the opinion of the court.

On October 18, 1952, Nathaniel Ferebee and Elsie Nichols, the alleged wife of Benson Nichols, were riding in the latter's automobile when it collided with an automobile owned by plaintiff, Harry C. Coureas, and driven by his son. Thereafter plaintiff instituted an action against Ferebee, Elsie and Benson Nichols to recover for damage to his automobile, which action was dismissed as to Benson Nichols but the plaintiff recovered a judgment for $1,500 against Elsie Nichols and Ferebee. When execution on this judgment was returned unsatisfied plaintiff instituted the present action against Allstate Insurance Company, hereinafter referred to as the Company, to recover under a policy of automobile liability insurance covering the automobile in which Ferebee and Elsie Nichols were riding at the time of the collision. The policy had been issued to Benson Nichols, and in compliance with Code, § 38.1-381,* it contained an "omnibus" clause defining the word "insured" to include "the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the

---

* Code, § 38.1-381 provides in part: "No policy or contract of personal injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, shall be issued or delivered in this State to the owner of such vehicle, or shall be issued or delivered by any insurer licensed in this State * * * unless it contains a provision insuring the named insured, and any other person responsible for the use of or using the motor vehicle with the consent, express or implied, of the named insured, against liability for death or injury sustained, or loss or damage occasioned within the coverage of the policy or contract as a result of negligence in the operation or use of such vehicle by the named insured or by any such person. * * *"

actual use of the automobile is by the named insured or with his permission." Under Code, § 38.1-381 such permission may be express or implied.

At the close of the plaintiff's evidence the Company moved to strike out all his evidence on the grounds that there was no showing of "who was driving the car at the time of the accident, or that Elsie Nichols was an assured as pleaded in the Motion for Judgment, or that anybody who was driving the car at the time of the accident, which remains unproven, it was with the permission, express or implied, of the owner of the policy, Benson Nichols." The court sustained the motion to strike, the jury returned a verdict for defendant, and judgment was entered in accordance therewith, to which judgment this writ of error was awarded.

The questions presented are: 1. Was there sufficient evidence to go to the jury from which it could have found that Elsie Nichols was driving at the time of the collision? 2. Was there sufficient evidence to go to the jury from which it could have found that Elsie Nichols was using the insured's automobile with his consent, express or implied? 3. Did the court err in excluding the statements made to plaintiff by Benson and Elsie Nichols following the collision to the effect that Elsie had the permission of Benson to use the automobile at the time of the collision?

It is axiomatic that "[i]n considering a motion to strike out all the plaintiff's evidence, the evidence is to be considered very much as on a demurrer to the evidence. All inferences which a jury might fairly draw from plaintiff's evidence must be drawn in his favor; and where there are several inferences which may be drawn from the evidence, though they may differ in degree of probability, the court must adopt those most favorable to the party whose evidence it is sought to have struck out, unless they be strained, forced, or contrary to reason." *Green* v. *Smith,* 153 Va. 675, 680, 151 S. E. 282.

Elsie and Benson Nichols did not appear at the trial and the only evidence bearing on the question of who was driving the named insured's automobile at the time of the collision was given by plaintiff's son as follows:

"Q. What were the positions of Elsie Nichols and Willie Nathaniel Ferebee in the car after the accident?

"A. Ferebee was lying—

＊　　＊　　＊　　＊　　＊　　＊　　＊

"Q. Did you get out of the car immediately after the accident?

"A. Yes, sir.

"Q. Describe their positions.

"A. Ferebee was lying on the floor, and she was lying behind the wheel with her back to the door.

"Q. Is that Elsie Nichols, the wife of Benson Nichols?

"A. That is right.

"Q. How soon after this accident did you see them in the positions you have just described?

"A. We got right out of the car. I found they were in such intoxicated state—they remained until the police came on the scene.

"By the Court:

"Q. Where was the lady?

"A. She was lying diagonally behind the wheel.

"Q. Where was the gentleman?

"A. On the floor.

"Q. Both on the front seat?

"A. Yes, sir."

Considering this evidence in the light most favorable to plaintiff, the jury would have been warranted in finding that Elsie Nichols was driving the automobile at the time of the collision. It was, therefore, error not to submit this issue to the jury.

■ On the question of whether Elsie Nichols had the express or implied consent of Benson Nichols to use the automobile, there was no evidence before the jury as to an express permission. However, there was testimony that Elsie Nichols and Benson Nichols were living together as husband and wife prior to, at the time of, and subsequent to the collision in question. On this aspect of the case plaintiff testified as follows:

"Q. Do you know whether or not Elsie Nichols and Benson Nichols are husband and wife?

"A. Yes, sir.

＊　　＊　　＊　　＊　　＊　　＊　　＊

"Q. Where were they living together as husband and wife?

"A. 839 A Avenue.

"Q. In the City of Norfolk, Virginia?

"A. Yes, sir.

"Q. Were they living together as such prior to and at the time of the accident?

\* \* \* \* \* \* \*

"A. Yes, sir, they were."

Where a man and woman live together and demean themselves toward each other as husband and wife, the law presumes that they have been legally married. While "cohabitation and repute do not constitute marriage, they do constitute strong evidence tending to raise a presumption of marriage, and the burden is on him who denies the marriage to offer countervailing evidence." *McClaugherty* v. *McClaugherty*, 180 Va. 51, 61, 21 S. E. 2d 761; *Newsom* v. *Fleming*, 165 Va. 89, 181 S. E. 393; *Eldred* v. *Eldred*, 97 Va. 606, 34 S. E. 477. See Evidence, Virginia and West Virginia, Nash, § 238, p. 416; 12 Michie's Jur., Marriage, § 9, p. 404.

This established principle of law, coupled with the favorable interpretation of plaintiff's evidence which must be given in considering a motion to strike, compels the conclusion that the evidence was sufficient to present a jury question as to whether Benson and Elsie Nichols were husband and wife.

If the jury find that the relationship of husband and wife existed, would it be warranted in concluding from this fact that the wife had permission to operate the husband's automobile?

We have held that Code. § 38.1-381, which is set out in the margin, *supra*, is for the benefit of a party who has suffered damages from the negligent use of an insured's motor vehicle when operated by another with the permission, express or implied, of the owner. Liability is not limited to acts of negligence in the operation of the motor vehicle in the business of the owner, but such operation may be in the business of the owner or otherwise. *Liberty Mutual Insurance Co.* v. *Venable*, 194 Va. 357, 73 S. E. 2d 366; *Liberty Mutual Insurance Co.* v. *Tiller*, 189 Va. 544, 53 S. E. 2d 814; *State Farm Mut., Etc. Insurance Co.* v. *Cook*, 186 Va. 658, 43 S. E. 2d 863, 5 A. L. R. 2d 594; *Hinton* v. *Indemnity Ins. Co.*, 175 Va. 205, 8 S. E. 2d 279. We have also held that implied permission may arise from a course of conduct between the parties and that such permission has a negative rather than an affirmative implication; that is, a permitted act may be one not specifically prohibited as contrasted to an act affirmatively and specifically authorized. *Liberty Mutual Insurance Co.* v. *Venable, supra*, at pages 360-1 and cases cited therein.

In *Maryland Casualty Co.* v. *Hoge*, 153 Va. 204, 149 S. E. 448, where the insured's wife had been in the habit of driving his car for

her own pleasure and convenience with his knowledge and consent, we held that such consent continued until revoked and would bar an insurance company's claim that she was driving without authority.

In the recent case of *Wise* v. *Ohio Casualty Ins. Co.*, 96 F. Supp. 380, *aff'd*, 192 F. 2d 1022 (6th Cir.), it was held that evidence of a course of conduct and the relationship between husband and wife was sufficient to establish that a husband has the implied permission of his wife to use her car.

There is, however, a dearth of authority on this precise point, which may, by negative implication be grounds for believing that generally it is conceded that wives drive family vehicles with the consent of their husbands. In any event we are of the opinion, and therefore hold, that where the evidence shows that a contract of personal injury or property damage liability insurance containing an omnibus clause has been issued, and that the insured and his wife are living together as husband and wife prior to, at the time of, and subsequent to a collision in which the wife was driving the insured vehicle, the jury is entitled to find, absent proof to the contrary, that at the time of the accident the wife was driving with her husband's implied consent. It follows, therefore, that when this principle is applied in the instant case, the trial court erred in refusing to submit to the jury the question of whether Elsie Nichols had the consent of her husband to use his automobile at the time of the collision.

■ Since our conclusions on the first two questions presented compel a reversal of the judgment and a remand of the action for a new trial, it is not necessary for us to decide the third question; but since the issue may arise upon a new trial, it may not be amiss for us to consider it now. Plaintiff offered to testify that both Elsie and Benson Nichols told him that Elsie had Benson's permission to drive the automobile at the time of the collision but this evidence was rejected by the court on the ground that it was hearsay.

If he had been permitted to do so, plaintiff would have testified as follows:

"Q. Mr. Coureas, you said you were engaged in conversation with Benson Nichols at his home; you talked to Benson Nichols and his wife?

"A. Yes, sir.

"Q. Tell us, if you will, about your conversation with his wife, the judgment creditor [*sic*], if she claimed to be insured.

"A. It was Sunday morning and Mr. Nichols was working at the

time, so she said. She said, 'That is where he keeps the keys for me and the insurance policy, we have an insurance policy to cover my accident, and you don't have to worry about anything.' With me was Mr. Anninos, we went to the home.

"Q. You and the attorney?

"A. Yes, sir. We went to his home and that night Mr. Nichols called me at the home and told me who he was, not to worry, that 'I have five and ten thousand dollars insurance.' I asked him again if he gave his wife authority to drive the car and he said, 'Sure, at the time of the accident she can use it.'

\* \* \* \* \* \* \*

"Q. Was there any conversation about his wife could use his car?

"A. Any time he was not using it she could."

"Hearsay evidence has been defined as evidence not proceeding from the personal knowledge of the witness, but from the mere repetition of what he has heard others say. * * * Expressed differently, whenever the assertion of any person other than that of the witness himself in his present testimony, is offered to prove the truth of the matter asserted, the evidence so offered is hearsay. * * * Hearsay evidence unless it falls within one of the recognized exceptions to the hearsay rule, is incompetent and inadmissible." Evidence, Virginia and West Virginia, Nash, § 133, pp. 236-7.

The tendered testimony was offered to prove that at the time of the collision Elsie Nichols was driving the car with the consent of her husband. Unless this testimony falls within a recognized exception to the hearsay rule it must be held to be inadmissible. Without citing any authority in support of his contention, plaintiff says the evidence was admissible merely because the Company "steps into the shoes of the insured." Regardless of whether this reason would be grounds for the admission of evidence under other facts and circumstances, in the instant case the tendered testimony was inadmissible because Elsie and Benson Nichols were not parties to the action nor in privity with the Company and their statements were not made against their interests but were made only against the interests of the Company. *Atlantic Coast Line R. Co.* v. *Bowen*, 192 Va. 162, 63 S. E. 2d 804, and authorities there cited. We agree with the trial court that this testi-

mony does not fall within any recognized exception to the hearsay rule and was therefore inadmissible.

For the reasons stated the judgment is reversed and the case remanded for a new trial.

*Reversed and remanded.*