COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Humphreys and Senior Judge Overton


SONIA WILLIAMS

                                                        MEMORANDUM OPINION
v.        Record No. 1152-03-2                              PER CURIAM
                                                         OCTOBER 14, 2003
CHESTERFIELD COUNTY
 DEPARTMENT OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                       Frederick G. Rockwell, III, Judge

            (Edwin F. Brooks, on brief), for appellant.

            (Michael S. J. Chernau, Senior Assistant County Attorney, on brief),
            for appellee.


        Sonia Williams appeals a decision terminating her parental rights to her son.  She

contends (1) the evidence was insufficient to support the termination and (2) that the trial judge

erred by permitting "the prior social worker's notes to be admitted pursuant to the business

records exception and used as substantive evidence against [her]."  Upon reviewing the record

and briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we

summarily affirm the decision of the trial court.  See Rule 5A:27.

                                    BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence

established the child was born on March 15, 1990.  By the time the child was three years old,

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Williams had been imprisoned for multiple felony charges. When Williams was imprisoned, she left the child in the care of his maternal grandmother. After his grandmother died in 1996, the child resided with his maternal aunt and uncle until they petitioned to be relieved of custody because they were unable to manage his behavior. On October 25, 2000, the Chesterfield County Department of Social Services obtained custody of the child. The Department implemented an initial foster care plan of "return home," upon the expectation that Williams would be paroled from prison in July 2001.

The Department contacted Williams and advised her to avail herself of the rehabilitative programs available to her in prison. The foster care plan called for the slow reintroduction of Williams to her son "in a manner that is therapeutic to [him]." The plan included initial telephone contact and letter writing, to be followed by visits. The initial steps of reinitiating contact, however, were unsuccessful. After the initial contact, the child's behavior deteriorated. Williams wrote only sporadically and sometimes inappropriately. She falsely represented her release time and her continued incarceration prevented her from achieving any of her responsibilities under the initial foster care plan.

The child was placed in a therapeutic foster home in November 2000 because he was severely emotionally disturbed. Despite extensive counseling and psychiatric services, he continued to exhibit verbal and physical aggression. He was hospitalized three times in an effort to stabilize his behavior, and he was treated at the Virginia Treatment Center for Children for eight months in 2001. He has thrived since his return to a therapeutic foster home. His foster parents are prepared to adopt him.

Williams's scheduled release was postponed due to her misconduct in prison. At the time of trial in March 2003, her release date still had not been determined. In his ruling, the trial

judge cited Williams's incarceration, her lack of contact with the child, and the child's need for structure and stability.

ANALYSIS

I.

In pertinent part, Code § 16.1-283(C)(2) provides that "[t]he residual parental rights of a parent . . . of a child placed in foster care as a result of court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child" and that the following conditions exist:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

Because "'[r]easonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case," Ferguson v. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992), we have held that the trial judge "must determine what constitutes reasonable and appropriate efforts given the facts before the court." Id. at 338-39, 417 S.E.2d at 4.

Williams contends that the Department failed to provide reasonable and appropriate services to assist her. The trial judge found, however, that the Department's actions were

reasonable, under the circumstances, and that Williams's incarceration limited the agency's capacity to remedy her deficiencies as a parent.

In Ferguson, we held as follows:

> [W]hile long-term incarceration does not, per se, authorize termination of parental rights or negate the Department's obligation to provide services, it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.

Id. at 340, 417 S.E.2d at 5. The evidence proved that Williams was incarcerated from the time the child was three years old. She had only minimal contact with him during the period of incarceration and failed to maintain appropriate contact when offered the opportunity to reestablish her relationship with her child. In addition, the record contains expert testimony that the child needed stability to ensure improved development and that direct contact with mother would be disruptive.

The trial judge found that the Department had fulfilled its duties under the statute. We will not disturb this finding because the record indicates that it was not plainly wrong or without evidence to support it. Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). Thus, the record supports the trial judge's finding that the Department proved by clear and convincing evidence that the best interests of the child would be served by terminating mother's parental rights pursuant to Code § 16.1-283(C)(2).

## II.

Social worker Kiva Best testified about entries made in the child's file by a prior social worker. Williams contends that the Department "made no effort to have the Court rule that the persons who made the entries or submitted the reports were unavailable or that it would be inconvenient to summons those persons to Court." She also contends that "there is nothing in the

trial Court record to indicate that the record entries . . . were made contemporaneous with the event described."  She further contends "it is unclear what records were made by [the Department's] agents . . . and which records were received from third party contractors."

Williams failed to raise any of these specific objections in the trial court.  This Court will not consider an argument on appeal that was not presented to the trial court.  Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).  Rule 5A:18 requires that objections to a trial court's action or ruling be made with specificity in order to preserve an issue for appeal.  Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (*en banc*).  A trial court must be alerted to the precise "issue" to which a party objects.  Neal v. Commonwealth, 15 Va. App. 416, 422-23, 425 S.E.2d 521, 525 (1992).  Accordingly, Rule 5A:18 bars our consideration of these specific issues on appeal.  Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

Williams did object that Best's testimony concerned records she had not prepared.  She argued that Best was not the "custodian" of the records and did not have personal knowledge of the contents of the records.  In determining the admissibility of evidence under the business records exception, however, the proper inquiry is as follows:

> The more recent Virginia cases have firmly endorsed the view that an entry made by one who lacks personal knowledge of the facts is admissible under the [business records] exception if the facts were related to the entrant by some person who (1) did have personal knowledge of the matters related, and (2) was himself or herself acting in the ordinary course of business.

Charles E. Friend, The Law of Evidence in Virginia § 18-15 (6th ed. 2003).

Best did not need personal knowledge of the facts recorded in the business records at issue.  The trial judge, therefore,  did not err by allowing Best's testimony.

Accordingly, we summarily affirm the decision.  See Rule 5A:27.

Affirmed.