COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardener, Kelsey and Senior Judge Hodges


WILLIAM A. CARR

v.      Record No. 0339-04-1

JAMES CITY COUNTY DIVISION                        MEMORANDUM OPINION*
  OF SOCIAL SERVICES                                   PER CURIAM
                                                      AUGUST 17, 2004

LISA E. CARR

v.      Record No. 0499-04-1

JAMES CITY COUNTY DIVISION
  OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
                        COUNTY OF JAMES CITY
                        Samuel T. Powell, III, Judge

            (Edward Janes Bell, III, on brief), for William A. Carr.  Appellant
            submitting on brief.

            (Virginia Leigh Major; Legal Services of Eastern Virginia,
            on brief), for Lisa E. Carr.  Appellant submitting on brief.

            (Michael H. Drewry, Assistant County Attorney; John D. Williams,
            Guardian *ad litem* for M.C.; Lee Ann Barnes, Guardian *ad litem* for
            J.C., on briefs), for appellee.  Appellee submitting on briefs.


        William A. Carr, father, and Lisa E. Carr, mother, appeal the decisions of the trial court to

terminate their residual parental rights to their three-year-old son, J.C., and one-year-old daughter,

M.C., pursuant to Code § 16.1-283(C).  On appeal, father contends the evidence was insufficient to

support termination because Social Services failed to establish that he had not responded adequately

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

to services. Mother advances three arguments on appeal: (1) the evidence was insufficient to establish that she failed to substantially remedy the conditions which led to foster placement; (2) Social Services did not offer reasonable and appropriate services to aid in reuniting her with her children; and (3) the trial court failed to consider a less drastic alternative than terminating parental rights and adopting out her children. Upon reviewing the record and briefs of the parties, we find no error in the trial court and conclude that the evidence was sufficient to support the termination of mother and father's residual parental rights. Accordingly, the judgments of the trial court are affirmed.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, J.C. was born January 9, 2001. In February 2001, Williamsburg Community Hospital contacted Social Services when J.C. was admitted and diagnosed with "non-organic failure to thrive." Social Services provided father and mother with information about feeding and caring for infants and assisted in making doctor's appointments and transporting the family for those appointments. In March, the family did not keep an appointment for immunizations. Social Services reported to the home and found J.C. in distress, father agitated and "rough," and mother asleep and smelling of alcohol. The child protective services worker, Diana Smith, testified she suggested changing J.C.'s diaper and father did not respond. Finally, Smith directed father to change the child, whereupon Smith saw that J.C. was bleeding from a severe diaper rash. Smith transported the family to the doctor, who then admitted J.C. to the hospital for a second time. When the hospital discharged J.C. he was released to father and mother, but ultimately was placed in foster care with his grandmother.

M.C. was born January 17, 2003. When Social Services learned that mother was pregnant with a second child, Mackenzie Seiler contacted father and mother to discuss their plans for avoiding the same situation as occurred with J.C. Father and mother were resistant to Seiler's offers of assistance in preparing for the child's arrival. Father and mother then refused all services and indicated they did not want any further involvement with Social Services. When M.C. was born, she had opiates in her system and displayed symptoms of going through withdrawal. Following an emergency removal, M.C. was placed in foster care with her grandmother. Father and mother continued to either refuse services or follow through with arranged services.

The evidence showed that father suffers from long-standing mental health and substance abuse problems. Further, the evidence showed father had a history of domestic violence. After J.C. was placed in foster care, Social Services offered father parenting classes, mental health counseling and substance abuse treatment. Father completed these services but they did not alleviate the problems with mental illness, substance abuse, inadequate parenting and domestic violence. Father missed most of his scheduled supervised visits and would go for long periods without seeing J.C. Father contacted fifteen to twenty physicians in the year prior to the termination proceedings and acquired excessive amounts of pain and psychotropic medications. In 2003, father was convicted of altering a prescription to obtain more pain medicine than prescribed. He was convicted of domestic assault and battery on his wife and mother, as well as assault and battery of a neighbor, who required hospitalization. After June 2003, father had no contact with Social Services, but testified that he had either started or enrolled in marital counseling, anger management counseling and substance abuse counseling. Father did not present any evidence that the problems with mental health, substance abuse or domestic violence had been remedied.

Smith and Seiler opined that it was not in the best interest(s) of the children to return them to father because of his continuing difficulty in the areas of mental health, substance abuse and

domestic violence.  Further, Jane Hollingsworth, a clinical psychologist, conducted a psychological examination of father to evaluate his parenting capacity.  She testified that it was not in the best interests of the children to return them to father.  She reported that his behavior patterns of substance abuse and mental illness were so entrenched that it would require sustained therapy and services for at least two years before she would consider his behavior to be stable enough to "safely care for a child."  The guardians *ad litem* for J.C. and M.C. also agreed that it was not in the best interests of the children to return them to father.

Mother suffers from depression, anxiety, paranoia, substance abuse and domestic violence.  After J.C. was removed from the home, mother attended parenting and anger management classes, and participated in mental health treatment.  Although she completed the services, these classes and services did not alleviate her problems with mental health, substance abuse, parenting skills and domestic violence.  Mother missed scheduled supervised visits and would go for long periods of time without seeing J.C.  Mother suffered from suicidal ideation and attempted suicide in 2003.  She continues to suffer from depression and anxiety.  Mother failed drug screens for marijuana and admitted to Social Services that she abused alcohol and pain medications.  Despite acknowledging this substance abuse, she denied having a "problem," and she accepted no responsibility for her daughter being born addicted to opiates.  Mother also was involved in a number of domestic violence incidents involving her husband and mother-in-law, including one conviction.  Mother completed an anger management class as a result of that conviction.  Mother testified that she had previously participated in marriage counseling and planned to enroll in future sessions with father.  However, she had not been involved with this counseling for any notable length of time, and mother failed to establish that she had remedied any of the identified problems.

Joanne Glass conducted a psychological evaluation to determine mother's parenting ability.  Glass reported that mother panicked over a diaper change and opined that mother could not provide

sustained parenting due to her anxiety and other mental health issues. Glass concluded that mother required long-term therapy, comprehensive mental health services, and recommended that the children not be returned to mother. The guardians *ad litem* concurred that it was in the best interests of the children that they not be returned to mother. Smith and Seiler agreed that it was not in the best interests of the children to be returned to mother.

## FATHER

Father's Question Presented challenges "whether the James City County Division of Social Services showed by sufficient evidence that [he] had not responded adequately to the services offered to him by the county before his parental rights were terminated." He points to no specific errors of the trial court, he advances no argument in support of this contention, and he cites no legal authority for this contention. "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration. We will not search the record for errors in order to interpret appellant's contention and correct deficiencies in a brief." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

However, on brief father argued that Social Services failed to provide reasonable and adequate services to address his specific needs. Father failed to raise this argument to the trial court. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Rule 5A:18 requires that objections to a trial court's action or ruling be made with specificity in order to preserve an issue for appeal. See Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991) (*en banc*). A trial court must be alerted to the precise issue to which a party objects. See Neal v. Commonwealth, 15 Va. App. 416, 422-23, 425 S.E.2d 521, 525 (1992). Therefore, we will not consider this question on appeal, because the requirements of Rule 5A:18 have not been met.

- 5 -

Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18. Code § 16.1-283(C) provides in pertinent part the following:

> [t]he residual parental rights of a parent or parents of a child placed in foster care . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. . . . The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

The trial court had sufficient evidence before it that father was unable or unwilling, within a reasonable amount of time, to substantially remedy his problems with mental health, substance abuse and domestic violence, which prevented him from adequately caring for J.C. and M.C. Accordingly, the judgment of the trial court terminating father's residual parental rights to J.C. and M.C. pursuant to Code § 16.1-283(C) is affirmed.

<u>MOTHER</u>

Mother argues the County failed to prove that she did not substantially remedy the conditions that led to her children's placement in foster care. When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." <u>Logan</u>, 13 Va. App. at 128, 409 S.E.2d at 463. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." <u>Farley v. Farley</u>, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." <u>Logan</u>, 13 Va. App. at 128, 409 S.E.2d at 463.

- 6 -

The County argues that mother failed to raise this question in the trial court. However, at trial mother argued that the County failed to meet its burden and that she established she attended a number of parenting classes, marital and substance abuse counseling sessions, anger management classes and obtained mental health treatment, both through Social Services and independently. Although mother never specifically stated she had substantially remedied the conditions, implicit in her argument and request that she be given an opportunity to parent the children before termination, is that she had rectified the problems that led to foster care placement. Therefore, the question is not barred by Rule 5A:18, and we will address the merits of this argument.

Although mother completed some classes and treatment through Social Services, and attended or enrolled in parenting, substance abuse, and anger management classes and sought mental health and marital counseling, independent of Social Services, mother failed to establish that she had benefited from the education and services. Mother refused to cooperate with Social Services and take the steps they outlined as necessary just to allow visitation. Nothing in the record proved that mother remedied the conditions. The record established that she accepted no responsibility for the codeine found in M.C.'s system upon birth, she had incidents of domestic violence and harassment involving father and her mother-in-law, she suffered from depression and anxiety and had a suicide attempt in June of 2003. Further, during her psychological evaluation to determine parenting ability, though she showed affection toward M.C., mother panicked while changing her diaper and later would not carry the child out to the waiting area, claiming the child was "too heavy." Glass reasonably concluded that mother required long-term therapy and did not have the ability to care for her children for any sustained period of time. Three years had already passed from the placement of J.C. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Srvs., 10 Va. App. 535, 540, 394

S.E.2d 492, 495 (1990). Therefore, the evidence supported the trial court's determination that mother had not substantially remedied the conditions that resulted in foster care placement.

Next, mother argues that the County failed to prove that Social Services offered reasonable and appropriate services to reunite her with her children. Mother failed to raise this argument before the trial court. Rule 5A:18 precludes our review of questions raised for the first time on appeal. Therefore, we will not consider this question on appeal, because the requirements of Rule 5A:18 have not been met. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

Finally, mother contends the trial court erred by failing to consider less drastic alternatives than terminating her residual parental rights. At trial, mother requested that she be given the opportunity to demonstrate her ability to parent the children because she had had no real opportunity to parent the children. She argued that the last time she was able to parent, J.C. was an infant and M.C. was just born.

The record showed that mother had not remedied the conditions that resulted in foster care placement in the three years after J.C. was placed in foster care. When mother stopped cooperating with Social Services, she obtained some mental health treatment and attended some classes, in part because of court orders resulting from criminal proceedings. Nevertheless, Smith, Seiler, Glass and both guardians *ad litem* concurred that mother still had not remedied the issues of mental health, substance abuse and domestic violence that adversely affected her ability to properly parent the children. As the trial court reasonably noted, what matters is not the fact of going to class but rather what one achieves as a result of those classes. The evidence showed that mother was incapable or unwilling to apply the therapy and education in a way that allowed her to parent the children in any meaningful and prolonged capacity. Glass opined that it would require long-term therapy and a strong commitment from mother, and she did not believe mother

could attain that goal.  Thus, the trial court had sufficient evidence that mother was either unable or unwilling to substantially remedy the conditions that resulted in foster care placement, within a reasonable time.  Therefore, the trial court reasonably rejected mother's request to be given an opportunity to parent the child before the court allowed adoption.

For the above stated reasons, the evidence supported the trial court's determination to terminate mother and father's residual parental rights to J.C. and M.C., pursuant to Code § 16.1-283(C).  Accordingly, the judgments of the trial court are affirmed.

<u>Affirmed.</u>